UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HENRY Li, an individual, and
METIS CENTER, LLC,
A Michigan limited liability company,
    Plaintiffs,

                 Case No. 1:22-cv-10495

v.

STEPHEN LARSEN, an individual,
And INTERLEARN, INC.,
A Delaware Corporation,
    Defendants.

## **VERIFIED COMPLAINT**

Plaintiffs state:

### Jurisdiction and Venue

1. Plaintiff, Henry Li ("Mr. Li"), is an adult individual domiciled in the State of California.

2. Plaintiff, Metis Center, LLC, is a Michigan limited liability company with its principal place of business being located in the State of California.

3. Defendant, Stephen Larsen ("Dr. Larsen"), is an adult individual domiciled in Cambridge, Massachusetts.

4. Defendant, Interlearn, Inc., is a Delaware corporation, with its principal headquarters being located in the City of Cambridge, and State of Massachusetts.

5. Jurisdiction is proper in this Court based on diversity of parties in which the amount in controversy exceeds $75,000.00, pursuant to 28 U.S.C. §1332(a)(1) (1948).

6. Venue is proper in this Court, as all Defendants are subject to personal jurisdiction in this forum, pursuant to 28 U.S.C. § 1391(b)(1), (2), and (d) (1948).

**General Allegation0s**

7. This matter arose on May 14, 2019, when the Plaintiffs and the Defendants, respectively, discussed a joint venture in education programs focused on consulting with universities in the United States to develop programs with students residing in China; as well as developing programs focused on consulting Chinese families in their efforts to send students to universities in the United States.

8. The parties began working together without a written contract regarding the parties' respective rights and obligations.

9. Plaintiffs' work covered several different areas, including program design, extensive market research, setting financial and academic policies, setting program prices and calculating profitability, creating marketing materials, reviewing legal documents, bringing in partners, meeting with university officials, managing recruitment operations, translation, etc. Much work was also done at 2:00 or 3:00 o'clock in the morning to observe China's time. From May 14, 2019 until June 2021, Mr. Li and Dr. Larsen were the only individuals working on the projects full-time; and were the only ones fully committed to the joint venture.

10. On September 5, 2019, Mr. Li, on behalf of both Plaintiffs, and Dr. Larsen, on behalf of both Defendants, discussed sharing profits from the parties' joint ventures 50-50.

11. On September 10, 2019, Mr. Li offered to join the parties' entities. Dr. Larsen replied that he preferred to maintain separate entities, while sharing profits from the parties' joint venture 50-50.

12. At the same time, Dr. Larsen agreed to sign a written agreement memorializing the parties' agreement to share profits equally; however, no agreement was prepared or signed.

13. In an effort to induce Plaintiffs to continue work on the joint venture, on October 23, 2019, Dr. Larsen made several misrepresentations to Plaintiffs, including inflating the assets and book value of Defendant Interlearn, Inc.; also misrepresenting that he had secured several exclusive contracts with universities in the U.S; that Defendant had IP-protected course materials and a Web platform; and that Defendants had developed programs ready for implementation; when in fact, all off the aforementioned programs, course materials, and technologies were all merely in an exploratory phase; and no contracts had been secured.

14. On December 2, 2019, Mr. Li flew to China at his own expense to meet with officials from Clark University about a joint US-China plan for the benefit of all parties.

15. On December 8, 2019, Mr. Li provided a marketing strategy for what would be branded the Interlearn iY1 program.

16. On February 10, 2020, the parties began to work together extensively on the iY1 program.

17. On February 29, 2020, Defendants gave Mr. Li an Interlearn e-mail address.

18. On July 1, 2020, Plaintiffs began working extensively to engage with Wesleyan University as a consortium partner, which included setting up a program structure, legal documents, and other things.

19. On August 27, 2020, Plaintiffs began working extensively with delivery partners for a full year pursuant to the parties' work with Syracuse University. Until that point, the "Syracuse Program" was in its early nascent stages. Plaintiffs' contributions to the project were essential to its first-year and ongoing success.

20. On October 3, 2020, Defendants gave Mr. Li the title of "Head of Partnership Development." Defendants later changed his title to "Head of Program Development."

21. On October 7, 2020, Plaintiffs began working extensively with Syracuse University on the iY1 program.

22. On or about October 10, 2020, Plaintiffs began working with Tulane University in hopes of obtaining a contract for the benefit of all parties.

23. On October 21, 2020, Plaintiffs began working with UC Riverside officials on behalf of all parties.

24. On or about December 1, 2020, Plaintiffs began working with Kadenze.com in hopes of obtaining a contract for the benefit of all parties.

25. On January 26, 2021, Plaintiffs began working on translations for Defendants and working on other collaborations with VEP, a Chinese education firm. Defendants were working with VEP behind Plaintiffs' backs at the same time.

26. On or about March 10, 2021, Plaintiffs began efforts to create the NYAS program for the benefit of all parties.

27. On or about April 20, 2021, Plaintiffs helped Defendants with efforts to create a program for NEOM.

28. Plaintiffs worked full-time, in addition to overtime, on programs that enriched Defendants from February 2020 until June 2021.

29. On June 2, 2021, Mr. Li wrote a message to Dr. Larsen, explaining that he could no longer afford to work full-time on the parties' joint venture without receiving any income; that Mr. Li would continue to work on the Syracuse program while limiting some of his other responsibilities.

30. Despite a cursory response from Dr. Larsen, Plaintiffs continued to work extensively with Defendants on everything but the UC Riverside Project until September 2021.

31. On multiple occasions over the course of the joint venture, Dr. Larsen assured Plaintiffs that they would be paid as soon as the operation generated revenue; and that the ownership structure and contractual agreement between the parties would be reduced to writing as soon as possible.

32. The parties did not discuss altering their profit-sharing agreement until September 13, 2021.

33. On September 13, 2021, Dr. Larsen told Plaintiffs that they would not be paid. Instead, Defendants offered Plaintiffs a 1.5% annualized vesting option; and demanded that Plaintiffs enter into a draconian noncompetition agreement for no additional consideration.

34. Since September 13, 2021, although the parties have engaged in negotiations for Defendants to compensate Plaintiffs for their work, Defendants have failed to pay any compensation to Plaintiffs to date.

### Piercing the Corporate Veil

35. Defendants have maintained common ownership of assets.

36. Dr. Larsen, at all relevant times, possessed pervasive control over Defendant, Interlearn, Inc.

37. Defendants confused and intermingled business and personal assets, as well as management.

38. Defendant, Interlearn, Inc. was undercapitalized.

39. Defendant, Interlearn, Inc. did not observe corporate formalities, including holding annual meetings and keeping corporate minute books.

40. Defendant, Interlearn, Inc. has not paid dividends to shareholders.

41. Defendant, Interlearn, Inc. is insolvent.

42. Dr. Larsen has siphoned away corporate assets from Interlearn, Inc.

43. Interlearn does not distinguish among shareholders, directors, and officers.

44. Dr. Larsen has used Interlearn, Inc. for personal transactions.

45. Interlearn, Inc. has been used by Dr. Larsen to perpetrate fraud on Plaintiffs and others.

46. Defendants should be held jointly and severally liable for the counts stated below.

## Count I—Breach of Contract

47. Plaintiffs incorporate Sections 1-46, above, by reference.

48. The parties entered into a written contract, consisting of a series of documents,[1] to enter into a joint venture for consulting services, consisting of offer, acceptance, and consideration.

49. Even though the parties failed to memorialize their agreement in a "final written agreement," the parties' intentions to share profits 50-50 are evidenced by their "various communications."[2]

50. Plaintiffs fully and completely performed their obligations under the contract between the parties.

51. Even if there was no contract between the parties, Defendants' promises to Plaintiff are enforceable at law, and not just in equity, based on detrimental "reliance," enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration."[3]

52. Defendants have breached their contractual duty to pay Plaintiffs their share of profits received by Defendants for services rendered, in part, by Plaintiffs.

---

[1] Sections 10-12, above.
[2] See *Frishman v. Maginn*, 75 Mass App Ct 103, 111 (2009), citing *Situation Mgmt. Sys., Inc.* v. *Malouf, Inc.*, 430 Mass at 878-879, *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass at 521.
[3] *Loranger Constr. Corp. v. E.F. Hauserman Co.*, 376 Mass 757, 761 n.1 (1978), citing *Sullivan v. O'Connor*, 363 Mass 579, 588 n.6 (1973) and Rest. (Second) of Contracts §90, Comm. a (Tent. Drafts Nos. 1-7, 1973).

53.     Plaintiffs have suffered money damages as a result of Plaintiffs' breach of the parties' contract, the amount of which, are in the exclusive control of Defendants; and are justly believed to exceed $75,000.00.

### Count II—Account Stated

54.     Plaintiffs incorporate Sections 1-53, above, by reference.

55.     Defendants acknowledged the existing condition of liability between the parties.[4]

56.     Therefore, Plaintiffs are entitled to recovery "without setting forth or proving the separate items of liability from which the balance results."[5]

57.     Defendants gave consent to a computation of a continuing open account.[6]

### Count III—Breach of Fiduciary Duty

58.     Plaintiffs incorporate Sections 1-57, above, by reference.

59.     Defendants owed a fiduciary duty to Plaintiffs.[7]

60.     Defendants breached their fiduciary duty to share profits with Plaintiffs within the scope of the fiduciary relationship when Defendants failed to pay any money at all to Plaintiffs.

61.     Defendants' breach was a "substantial legal factor in bringing about the alleged harm."  It is indeed the actual and proximate cause of the damages to Plaintiffs.

---

[4] Sections 11 and 12, above.
[5] *Chace v. Trafford*, 116 Mass 529 (1875).
[6] Sections 11 and 12, above, and *Corbin on Contracts*, §72.1 (2007).
[7] "Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence that naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." *Warsofsky v. Sherman*, 326 Mass 290, 293 (1950); A fiduciary relation exists "between two persons when one of them *is under a duty to act for* or to give advice for the benefit of another upon matters within the scope of the relation." *Korper v. Weinstein*, 57 Mass App Ct 433, 437 (2003), citing Rest. (Second) of Torts §874 (emphasis added).

62. Plaintiffs were damaged by Defendants' breach of their fiduciary obligation to share profits.

### Count IV—Aiding and Abetting Breach of Fiduciary Duty

63. Plaintiffs incorporate Sections 1-62, above, by reference.

64. Each defendant knew of the breaches of contract made by each co-defendant.

65. Each defendant actively participated or substantially assisted in each co-defendant's breach; or encouraged the breach to a degree that it could not reasonably be held to have acted in good faith.

### Count V—Money Had and Received

66. Plaintiffs incorporate Sections 1-65, above, by reference.

67. On information and belief, Defendants have obtained money in consideration for the work done by Plaintiffs on the parties' joint venture.

68. Under the circumstances, in equity and good conscience, the money should be split evenly with Plaintiffs.

### Count VI—Conversion

69. Plaintiffs incorporate Sections 1-68, above, by reference.

70. Defendants intentionally and wrongfully exercised control or dominion over personal property in the form of intellectual property, chattel paper, accounts receivable, and proceeds, 50% of which rightfully belonged to Plaintiffs.

71. Plaintiffs had an ownership or possessory interest in the property at the time of the conversion by Defendants.

72.     Plaintiffs were damaged by Defendants' exclusive control and dominion over the property described above to the extent of 50% of profits, the amount of which is within the exclusive control of Defendants.

73.     Plaintiffs demanded that the property described above be conveyed to them; and Defendants refused to comply with Plaintiffs' rightful demand.

## Count VII—Unjust Enrichment

74.     Plaintiffs incorporate Sections 1-73, above, by reference.

75.     If there was no contract between the parties, then there is an absence of remedy provided by law.

76.     Defendants were enriched by the contributions made by Plaintiffs to the parties' joint venture.

77.     Plaintiffs were impoverished by Defendants' failure to pay over Plaintiffs' one-half share of profits.

78.     The relationship between Defendants' enrichment and Plaintiffs' impoverishment is direct.

79.     Defendants were unjustified in enriching themselves while impoverishing Plaintiffs.

## Relief Requested

WHEREFORE, Plaintiffs respectfully request this Court to enter an order:

a.     finding that Defendants are the holders of a constructive trust for the benefit of Plaintiffs for 50% of all income obtained by Defendants during the parties' joint venture, as well as 50% of profits arising out of the parties' joint venture;

    b.    finding that Defendants are jointly and severally liable for 50% of profits during the parties' joint venture, as well as 50% of profits arising out of the parties' joint venture, and;

    c.    calculating damages due from Defendants to Plaintiffs based upon initial disclosures, and upon the filing of a dispositive motion by Plaintiffs.

## JURY DEMAND

Plaintiffs, by and through counsel, hereby demand that the above-captioned matter be submitted to a jury for adjudication of all factual issues.

Respectfully submitted,

THE PLAINTIFFS,
HENRY LI and METIS CENTER, LLC

By: /s/ *Greil Roberts*
Gordon Rees Scully Mansukhani, LLP
Greil Roberts – MA Bar # 683229
21 Custom House Street – Fifth Floor
Boston, MA 02110
Phone: (857) 263-2000
groberts@grsm.com

Stephen C. Bappert, Esq.
Bappert Law, PLLC
Applicant for *pro hac vice* Admission
16 Budlong St.
Hillsdale, MI 49242
Phone: (517) 439-1441
Fax: (517) 689-5907
E-mail: steve@bappertlaw.com